UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BOB DAWSON, *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>PORCH.COM, INC., *et al.*,<br><br>　　　　　　　Defendants. | Cause No. C20-0604RSL<br><br>ORDER DENYING DEFENDANTS'<br>MOTION FOR SANCTIONS |

This matter comes before the Court on defendants' "Motion for Sanctions." Dkt. # 41. Defendants seek terminating sanctions or, in the alternative, the disqualification of plaintiffs' counsel pursuant to the Court's inherent authority and/or 28 U.S.C. § 1927. Having reviewed the memoranda, declarations, and exhibits submitted by the parties, and having heard the arguments of counsel, the Court finds as follows:

In early 2019, Thomas Alvord, the founder and managing partner of the law firm representing plaintiffs in the above-captioned matter, developed a smartphone application through which users could report spam and, if warranted, initiate suit against those responsible. One such user reported receiving hundreds of spam text messages from defendant GoSmith. While communicating with GoSmith's lawyers about the reports, Mr. Alvord was told that the user had agreed to GoSmith's terms of service, which authorized the communications about which he was complaining. The user denied having created a GoSmith account or having agreed

ORDER DENYING DEFENDANTS'
MOTION FOR SANCTIONS - 1

to its terms of service. Mr. Alvord and the user went through the process of creating an account on May 31, 2019, "to see what an account contained." Dkt. # 61 at ¶ 11. Mr. Alvord used his name, address, and email, but adopted the service the user provided (pool services) and used a fake company name to create a provider account on GoSmith's website. In order to complete the process, Mr. Alvord had to affirmatively indicate his consent to GoSmith's Terms of Use and Privacy Policy. Those terms required that "the information you provide us will be accurate and complete" and required Mr. Alvord's agreement that he would not:

- "access, download, monitor, or copy any content or information on the Smith Properties or in the Services through automated or artificial means (including, but not limited to, screen and database scraping, spiders, robots, crawlers, deep-link, or any similar or equivalent automatic or manual process);"

- "otherwise obtain or attempt to obtain any content or information through any means that Smith does not intentionally [make] available through the Smith Properties and the Services;"

- "harvest information about Consumers or Service Providers from the Smith Properties or the Services;"

- "use, or attempt to use, the Smith Properties or the Services through any means not explicitly and intentionally made available, provided or intended;" or

- "engineer, decompile, disassemble or otherwise attempt to derive the source code or architectural framework fo the Smith Properties of the Services."

Dkt. # 44-1 at 6, 8-9.

By the end of 2019, Mr. Alvord had incorporated LawHQ, LLC, and was investigating the numerous reports he was receiving regarding GoSmith's spamming activities. As part of this

ORDER DENYING DEFENDANTS'
MOTION FOR SANCTIONS - 2

investigation, he clicked on the unique URL links contained in the messages his clients received from GoSmith and found that the clients' names, phone numbers, and other identifying information were easily accessible. If he changed the last digit of a given URL, another provider's profile page would open and, again, that provider's personal information was disclosed. None of the pages was password protected, no sign in or authentication was required, and his clients (and he) could use the text message link to go to GoSmith's website without having an account.

Once on a provider's profile page, Mr. Alvord could use his browser's "Developer Tools" to see bits of information that the webpage loaded into the browser but were not otherwise visible. Where the "Developer Tools" disclosed a URL, Mr. Alvord visited the designated webpage. In this way, he could tell whether a provider had created a password for GoSmith and/or accepted GoSmith's Terms of Use: a value of "null" in those fields indicated to him that the provider had not created a GoSmith account and had not, therefore, consented to the spam messages they received from GoSmith. The URL also disclosed where GoSmith had obtained the provider's information, such as the webpages for the Better Business Bureau, Yelp, and the Yellow Pages. Anyone who visited a provider's page and ran "Developer Tools" could access the information described above: no account, password, or sign-in was needed.

Mr. Alvord concluded that GoSmith had scraped other websites for contact information, spammed the identified service providers with text messages offering to sell them leads to consumers, and required the providers to create an account and accept the Terms of Use before viewing the lead. During his investigation, he saved the data he viewed that related to his clients. On December 26, 2019, Rebecca Evans, a lawyer at LawHQ, filed a lawsuit in the Northern

ORDER DENYING DEFENDANTS'
MOTION FOR SANCTIONS - 3

District of California against GoSmith on behalf of two individuals alleging violations of the Telephone Consumer Protection Act ("TCPA"). LawHQ continued to receive complaints regarding GoSmith's spam.

In mid-January 2020, GoSmith announced that it would be shutting down its operations at the end of the month. Mr. Alvord had his staff save approximately 3% of the profiles on GoSmith's website (totaling 340,000 webpages) and hired an internet security expert to verify and document that the information Mr. Alvord was copying was publicly accessible. *See* Dkt. # 62.[1] The expert captured the information from another 100,000 GoSmith webpages just before the company ceased operations. In authorizing these data captures, Mr. Alvord considered various factors before determining that "there was nothing improper in doing so," including the absence of any viable claim of trade secret in information that had been scraped from third-party websites, GoSmith's unclean hands in scraping information from websites that prohibited scraping, and case law suggesting that scraping public web content that is not password protected is not a violation of the Computer Fraud and Abuse Act. Dkt. # 61 at ¶¶ 49-53.

At the end of January 2020, GoSmith attempted to convince plaintiffs' counsel that the text messages sent to her clients had been sent manually and did not violate the TCPA. Ms. Evans was unpersuaded and filed a second lawsuit in the Northern District of California, this time on behalf of 330 individuals. Having learned that GoSmith had been acquired by Porch.com and that its clients were reporting spam from both entities, LawHQ sued not only GoSmith, but

---

[1] Dale Rowe, a cybersecurity consultant, confirmed that all of the information Mr. Alvord reviewed and saved was available to the public, could be accessed without circumventing security controls, did not require an account with GoSmith, and did not involve any reverse engineering of compiled code, binaries, or executables. Dkt. # 62 at ¶¶ 27-29; Dkt. # 62-1 at 25.

ORDER DENYING DEFENDANTS'
MOTION FOR SANCTIONS - 4

also Porch.com and the corporate officers allegedly responsible for the spam.[2] Ms. Evans notified defendants of the new filing via email and inquired whether they "would like to seriously discuss a settlement." Dkt. # 42-1 at 2. Efforts to reach a global settlement were unsuccessful, however. The parties' positions made compromise unlikely: GoSmith insisted that it had done nothing wrong, and LawHQ maintained that every one of the millions of text messages GoSmith has sent exposed it to statutory damages, with its clients' claims totaling approximately $10 billion.

LawHQ used a number of methods to solicit clients who had received telephone spam and were interested in seeking redress under the TCPA. In connection with GoSmith, LawHQ utilized the contact information it obtained from GoSmith's provider profiles to target its advertising. Hundreds of individuals have responded to LawHQ's communications with complaints of spam from GoSmith and/or Porch.com. Despite defendants' insistence that the text messages sent to LawHQ's clients did not violate the TCPA, LawHQ has filed a total of thirteen lawsuits against them in the jurisdictions where their clients or defendants reside. LawHQ represents over a thousand individual plaintiffs in these lawsuits. All but one of the cases have now been consolidated in this district.

LawHQ has declined to return the data it copied from GoSmith's website. Defendants filed this motion seeking an order sanctioning LawHQ, its founder, and plaintiffs' counsel pursuant to this Court's inherent authority and/or 28 U.S.C. § 1927, arguing that:

> (1) LawHQ acted willfully, recklessly, and in bad faith by misappropriating GoSmith's confidential and proprietary data for personal gain, using it to solicit

---

[2] Plaintiffs in the first-filed suit amended their complaint to add GoSmith's parent and corporate officers.

ORDER DENYING DEFENDANTS'
MOTION FOR SANCTIONS - 5

clients and then initiate mass tort actions, while refusing to return the data and (2) LawHQ acted in bad faith by, for example, threatening and then filing additional mass tort actions when Defendants rebuffed their settlement demands.

Dkt. # 41 at 7. Defendants seek dismissal of the lawsuit, disqualification of counsel, an injunction, and monetary sanctions, including reasonable attorney's fees and costs.

**A. 28 U.S.C. § 1927**[3]

Pursuant to 28 U.S.C. § 1927, "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Fees are appropriate under § 1927 if "an attorney knowingly or recklessly raises a frivolous argument, or argues a [ ] claim for the purpose of harassing an opponent, which qualifies as bad faith." *Caruso v. Wash. State Bar Ass'n*, 2017 WL 2256782, at *3 (W.D. Wash. May 23, 2017) (quoting *W. Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1528 (9th Cir. 1990)). Actions taken "with the intent to increase expenses…or delay" may also constitute bad faith worthy of sanctions. *Nielsen v. Unum Life Ins. Co. of Am.*, 166 F. Supp. 3d 1193, 1195 (W.D. Wash. 2016) (citing *NewAlaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989)).

Defendants seek an award of the "excess" expenses incurred as a result of LawHQ's choice to file multiple proceedings on behalf of individuals rather than a class. They maintain that LawHQ made these choices for the improper purpose of increasing defense costs and extorting a large settlement. Plaintiffs have, however, provided reasonable and legitimate

---

[3] Where there is a statute or rule that addresses the conduct at issue, the Court should ordinarily rely on that authority before turning to its inherent powers. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). The Court will, therefore, determine whether § 1927 is "up to the task" in the circumstances presented here. *Id*.

ORDER DENYING DEFENDANTS'
MOTION FOR SANCTIONS - 6

explanations for their litigation choices, namely that LawHQ and their clients prefer individual litigation over class actions, that clients presented themselves over time, necessitating subsequent filings, and that LawHQ filed suits where their clients reside whenever possible (and in California if the client was in a state where LawHQ could not operate). Defendants do not dispute any of these assertions. Their avowed preference for being the targets of a class action does not trump plaintiffs' needs or preferences.

Defendants also argue that LawHQ's filing and pursuit of meritless claims makes any demand for settlement improper. The merits of plaintiffs' TCPA claim have not been tested: defendants specifically avoided "the merits of the underlying suit" in their motion. Dkt. # 65 at 7. LawHQ maintains that it has evidence to support its claims that the offending text messages were automated and asserts that defendants have sent millions of unsolicited messages to its clients, each of which may trigger the significant statutory penalties Congress has established. The Court is not prepared to resolve these issues in the context of this motion. In the circumstances presented, the fact that LawHQ did not accept GoSmith's protestations of innocence and inquired about the possibility of a settlement commensurate with the perceived value of the claims asserted does not establish bad faith or an intent to increase expenses unnecessarily.

Having failed to show either that plaintiffs' claims are frivolous or that LawHQ has litigated those claims in a harassing or vexatious manner, defendants are not entitled to an award of fees or costs under 28 U.S.C. § 1927.

**B. Inherent Powers**

"Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to

ORDER DENYING DEFENDANTS'
MOTION FOR SANCTIONS - 7

manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Goodyear Tire & Rubber Co. v. Haeger*, __ U.S. __, 137 S. Ct. 1178, 1186 (2017) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)). The Court's inherent powers include "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 44-45. "Courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983) (upholding dismissal of complaint pursuant to the court's inherent power where plaintiff's denials of material fact were knowingly false and plaintiff willfully failed to comply with discovery orders). *See also Combs v. Rockwell Int'l Corp.*, 927 F.2d 486 (9th Cir. 1991) (affirming dismissal under the court's inherent power as appropriate sanction for falsifying a deposition). "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44.

Dismissal is a harsh sanction that is appropriate only where the conduct to be sanctioned is the result of "willfulness, fault, or bad faith." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (citation omitted). In determining whether terminating sanctions are appropriate, the Court must weigh "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993) (citations omitted). In addition, "[d]ue process concerns further require that there exist a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression

ORDER DENYING DEFENDANTS'
MOTION FOR SANCTIONS - 8

'threaten[s] to interfere with the rightful decision of the case.'" *Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995) (quoting *Wyle*, 709 F.2d at 591).

Dismissal is not warranted here. Mr. Alvord's misconduct, if any, occurred when he created a GoSmith provider account that misstated the professional services he was offering to consumers. Defendants have not argued, and there is no evidence, that Mr. Alvord used that account to do anything other than to see what a provider would see on the GoSmith page and to confirm that his client was unfamiliar with the process and had not, in fact, agreed to GoSmith's terms of service. The existence of that account did not create the causes of action at issue here, nor does it appear that plaintiffs intend to use information acquired through that account to prove their claims. Mr. Alvord may have violated GoSmith's Terms of Use when he created a provider account for a fictitious company, but the alleged deception or wrongdoing is "wholly unrelated to the merits of the controversy." *Phoceene Sous–Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 806 (9th Cir. 1982). Terminating sanctions based on allegations of wrongdoing that will have no impact on the administration of justice in this case would be an abuse of discretion. *Id. See also Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (9th Cir. 1988) (reversing dismissal where alleged misconduct peripheral to merits of case).

What defendants are complaining about - namely, the accessing of GoSmith's webpages and copying of information found there - was accomplished through the links that GoSmith had sent to LawHQ's clients. At the very least, GoSmith invited these providers to the webpage specified by the URL, and it imposed no limits on their access once there. Defendants have not shown that LawHQ's use of its clients' links was improper, that the provider information found there was maintained in confidence, or that any rule, statute, or contractual provision prohibited

ORDER DENYING DEFENDANTS'
MOTION FOR SANCTIONS - 9

LawHQ's foray into other publicly accessible pages of GoSmith's site.

When acting under its inherent powers, a district court must find either (1) a willful violation of a court order or (2) bad faith. *See Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012). Defendants do not allege a willful violation of a court order and therefore must show bad faith, such as conduct done vexatiously, wantonly, or for oppressive reasons. On the record before it, the Court finds that defendants have failed to show wrongful, much less bad faith, conduct. In the absence of sanctionable conduct that threatens the administration of justice, none of the relevant considerations – (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; or (5) the availability of less drastic sanctions – militate in favor of dismissal.

The Court also has the power to use its inherent powers to manage the litigation before it by, for example, barring witnesses, excluding evidence, awarding attorney's fees, or assessing fines. *F.J. Hanshaw v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1136 (9th Cir. 2001). Defendants request that the Court disqualify LawHQ from representing plaintiffs in this matter, require a full disclosure and return of all information copied from GoSmith's webpages, and to retain all evidence of or relating to its access to and copying of provider information from GoSmith's site. LawHQ's conduct, as reflected in the current record, involved no deception towards the Court and poses no threat to the orderly administration of justice in this case. Having failed to show sanctionable conduct, no sanctions are warranted.[4] In light of this dispute,

---

[4] At oral argument, defense counsel reiterated its assertion that GoSmith had copied not only provider information, but also information regarding GoSmith's homeowner clients. To the extent LawHQ copied homeowner account information, it shall return the information and make no further use

ORDER DENYING DEFENDANTS'
MOTION FOR SANCTIONS - 10

however, plaintiffs and LawHQ shall refrain from altering or destroying any of the information copied from GoSmith's website until this litigation is finally resolved.

For all of the foregoing reasons, defendants' motion for sanctions (Dkt. # 41) is DENIED.

Dated this 17th day of August, 2021.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

---

of it.

ORDER DENYING DEFENDANTS'
MOTION FOR SANCTIONS - 11