**AJG Law Group, PC**
Andrew J. Gramajo, CA Bar No. 338144
25A Crescent Dr. #402
Pleasant Hill, CA 94523
(415) 638-9140
Andrew@Ajglawgroup.us

**The HQ Firm, P.C.**
James S. Wertheim (*pro hac vice*)
Karissa Murphy (*pro hac vice*)
7533 S. Center View Ct. #4424
West Jordan, UT 84084
385-440-4121
jim@thehqfirm.com
Karissa.murphy@thehqfirm.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Bob Dawson et al.,<br><br>    Plaintiff,<br><br>    v.<br><br>Porch.com et al.,<br><br>    Defendant. | Case No. 3:24-cv-07974-JD<br><br>**THIRD AMENDED COMPLAINT AGAINST DEFENDANTS BRENTON MARRELLI AND DARWIN WIDJAJA**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. Americans receive over 100 billion spam text messages every year. "Being deluged with 'spam' telemarketing text messages is the bane of modern life. In a world where countless companies try to capture our attention, it can be exasperating to receive yet another ping on a smartphone." *Borden v. eFinancial, LLC*, 53 F.4th 1230, 1231 (9th Cir. 2022).

2. The Telephone Consumer Protection Act ("TCPA") prohibits the sending of text message to people on the Do Not Call list and alternatively messages that do not identify the sender. The equivalent Washington statute ("CEMA") prohibits sending commercial text messages without consent.

3. Plaintiffs Bob Dawson ("Dawson") and Jack Rabin ("Rabin") are residents of Washington and thus have claims under CEMA. Plaintiffs Bob Dawson, Brandon Finlayson ("Finlayson"), Jack Rabin, Mark Anderson ("Anderson"), David Dunn ("Dunn"), and Brian Hammers ("Hammers") (collectively, the "Plaintiffs") all have claims under the TCPA.

4. Defendants Brenton Marrelli ("Marrelli") and Darwin Widjaja ("Widjaja") (collectively, the "Defendants") were the principals in control of a company, GoSmith, that sent voluminous text messages in this case to each Plaintiff in violation of the TCPA and CEMA. Defendants admit that they designed and controlled the programs under which the messages were sent. They could have complied with the TCPA, but instead they chose to knowingly violate the TCPA. They have been subject to 10 TCPA lawsuits.

5. A corporate officer is personally liability under the TCPA for actions he personally authorized or took or if he actively oversaw and directed the conduct. Under CEMA a corporate officer is personally liable if he assisted in the transmission of text messages that violated the act. Therefore, Defendants are personally liable for the violations at issue.

6. Plaintiffs have received thousands of spam text messages from Defendants in short periods of time. Plaintiff Dawson received over 1,000 unsolicited spam text messages from Defendants. On many days he received 10 or more text messages. Some days he received multiple messages in a few minutes. In some months he received over 100 messages. The spam often arrived every day.

7. Plaintiffs Finlayson, Rabin, Anderson, Dunn, and Hammers tried to eliminate the harassment and invasion of privacy from unauthorized text messages by registering their phone numbers on the National Do Not Call Registry ("DNCR"), and by directly asking Defendants to stop, but even that did not work. The messages continued ever after the stop requests were made.

8. Plaintiffs have no relationship with GoSmith or Defendants, have no account with GoSmith or Defendants, have never provided any phone number to GoSmith or Defendants, and have never agreed for GoSmith or Defendants to send any type of communication.

9. Defendants blast text messages without caring whether they had consent, whether the recipient asked for the calls to stop, or whether the recipient was on the DNCR.

10. To make matters worse, Defendants hid the identity of the caller when sending text messages to try to avoid getting caught.

11. Plaintiffs have had their home and privacy invaded by Defendants' relentless spam.

12. "Robocalls and robotexts are nuisances. Congress banned them in the Telephone Consumer Protection Act of 1991 ('TCPA'). But as every American knows, there are companies—like the defendant in this case—who refuse to get that message while collectively sending millions of others." *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021).

**PARTIES**

13. Plaintiffs Bob Dawson, Brandon Finlayson, Jack Rabin, Mark Anderson, David Dunn, and Brian Hammers are a "person" as defined by 47 U.S.C. § 153 (39).

14. Defendant Brenton Marrelli is a "person" as defined by 47 U.S.C. § 153 (39) and is a resident of San Mateo County, California.

15. Defendant Darwin Widjaja is a "person" as defined by 47 U.S.C. § 153 (39) and is a resident of Alameda County, California.

**JURISDICTION, VENUE, AND DIVISION**

16. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the TCPA, which is a federal statute.

17. The Court has supplemental jurisdiction over the Washington Plaintiffs' state claims under 28 U.S.C. § 1367.

18. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants reside in the district.

19.     Divisional Assignment: Assignment to the San Francisco Division is proper under Civil Local Rule 3-2(c) because Defendants reside in San Mateo and Alameda Counties.

## LEGAL STANDARD

20.     **National Do Not Call Registry -** "No person or entity shall initiate any telephone solicitation to… [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2).

21.     **Minimum Telemarketing Standards** - "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber" without first instituting certain "minimum standards." 47 C.F.R. § 64.1200(d). When people request not to receive calls, the telemarketer must "record the request and place the subscriber's… telephone number on [an internal] do-not-call list." *Id*. at (d)(3). The telemarketer also "must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." *Id.* at (d)(4).

22.     **Washington Commercial Text Messages**. No person "may initiate or assist in the transmission of an electronic commercial text message to a telephone number assigned to a Washington resident" unless the recipient has "clearly and affirmatively consented in advance." RCW 19.190.060(1), .070(1)(b).

23.     **Personal Liability**. A corporate officer is directly liable for illegal calls if the officer had direct, personal participation in or personally authorized the unlawful conduct at issue. *See*, e.g., *Transgo, Inc. v. Ajac Transmission Parts Corp*., 768 F.2d 1001, 1021 (9th Cir. 1985) ("A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf."); *Dawson v. Porch.com*, No. 2:20-CV-00604-RSL, 2024 WL 4765159, at *10–11 (W.D. Wash. Nov. 13, 2024).

24.     With regards to liability for a Washington CEMA violation, a corporate officer is personally liable if he "assist[ed] the transmission" of text messages that violated the act. CEMA

defines "assist the transmission" to mean acts taken to provide "substantial assistance or support" enabling another to "formulate, compose, send, originate, initiate, or transmit a commercial electronic text message when the actor "knows or consciously avoids knowing" that the message is unlawful. RCW 19.190.010(1); *Dawson v. Porch.com*, No. 2:20-CV-00604-RSL, 2024 WL 4765159, at *10–11 (W.D. Wash. Nov. 13, 2024).

## STATEMENT OF FACTS

### *GoSmith and Defendants*

25. GoSmith is a company that solicited contractors to pay for leads. GoSmith, at the direction and through defendants, sent thousands of uninvited text messages to plaintiffs.

26. Many of the text messages included website links such as www.smithjobs-2.com.

27. Marrelli is the co-founder, CEO, and "Governor" of GoSmith who personally created, set up, ran, and oversaw GoSmith's telemarketing marketing from its inception.

28. In a declaration filed in August 2017, Marrelli stated: "I am the Chief Executive Officer ('CEO') of GoSmith, Inc. ('GoSmith'), and I have held this position since January 2017. In my role as CEO of GoSmith, **I am involved in nearly every facet of GoSmith's operations and have comprehensive personal knowledge of GoSmith's business model and internet operations**." *See* Ex. A: Declaration of Brenton Marrelli; *see also Rojas v. GoSmith, Inc.*, No. 2:17-cv-00281-JVB-JEM (N.D. Ind. Aug. 25, 2017), Dkt. 16-2, ¶ 2 (emphasis added)

29. Widjaja is the co-founder of GoSmith who personally created, set up, ran, and oversaw GoSmith's marketing and client contact management system from its inception. In a declaration filed October 2017, Widjaja stated: "I am the Chief Technology Officer ('CTO') of GoSmith, Inc. ('GoSmith), and I have held this position since January 2017. In my role as CTO of GoSmith, **I am involved in nearly every facet of GoSmith's operations and have comprehensive personal knowledge of GoSmith's business model and internet operations**." *See* Ex. B: Declaration of Darwin Widjaja; *see also La Force v. GoSmith, Inc.,* No. 4:17-cv-05101-YGR (N.D. Cal. Oct. 20, 2017) Dkt. 16-1, ¶ 2.

30. Widjaja stated that he was the CTO of GoSmith on his LinkedIn profile and states that: "My co-founder [Marrelli] and I bootstrapped the company and in 5 years, we were able to grow the service to cover nationwide and reaching [sic] $10M in annual revenue. Prior to an acquisition by Porch.com in January 2017, I was building and managing a team of engineers, designer [sic] and customer success managers." *See* Ex. C: Darwin Widjaja's Linkedin Profile; *see also* https://www.linkedin.com/in/darwinwidjaja/, last accessed on January 30, 2020 2:25 p.m. MST (downloaded on October 23, 2019).

31. The WHOIS domain information for smithjobs-2.com shows the registrant's name as Darwin Widjaja and registrant email as darwin@gosmith.com. This indicates Widjaja was personally involved in the technological setup and administration of these telemarketing campaigns and personally registered the domains.

32. Marrelli and Widjaja have been directly involved in the strategy, approval, set up, and execution of telemarketing campaigns targeting Plaintiffs, including Washington residents, which violated the TCPA and gave rise to Plaintiffs' injuries.

33. Marrelli and Widjaja personally authorized, oversaw, contributed to, and directed the engineers who built the system that produced and stored Plaintiffs' information.

34. Marrelli and Widjaja personally managed and directed the telemarketing central to their business which aggressively solicited Plaintiffs.

35. Marrelli and Widjaja were responsible for implementing policies and procedures for TCPA compliance. However, they failed to implement policies or procedures for TCPA compliance. They further failed to properly train employees in the required TCPA procedures, and they knowingly participated, authorized, built, and directed an illegal telemarketing platform which violated the TCPA and harmed Plaintiffs. Each is personally liable as a tort participants in their own right.

36. Since 2017, GoSmith has been sued 10 times for TCPA violations. In each lawsuit, Marrelli and Widjaja were given actual and constructive notice that their telemarketing was problematic and illegal. Marrelli and Widjaja were in the position to correct the illegal

telemarketing scheme, yet they continued to authorize the telemarketing methods.

<em>Text Messages to Plaintiffs</em>

37. Plaintiffs received unwanted and unsolicited text messages from Defendants.

38. None of the Plaintiffs gave their phone number to Defendants or GoSmith, nor did any of the Plaintiffs consent in any way to the text messages.

39. The text messages did not have an emergency purpose.

40. The text messages advertised leads to home improvement work.

41. The text messages encouraged and required Plaintiffs to make a payment to obtain the leads. Thus, the text messages constitute "telemarketing" and "telephone solicitations" as defined by the TCPA; and constitute a "electronic commercial text message" as defined by the Revised Code of Washington.

42. Here are two examples of text messages that Plaintiffs received:[1]




43. GoSmith and Defendants encouraged Plaintiffs to spend $8 to purchase leads.

---

[1] Also see Ex. D which is a sample of the messages GoSmith sent to Plaintiff Bob Dawson.

44. None of the text messages Defendants sent ever asked Plaintiffs if they wanted to come work for Defendants or offered Plaintiffs employment.

*Claims of Each Plaintiffs*

45. Plaintiff Dawson personally owns and uses the cellular phone number xxx-xxx-8008. This number is a residential telephone subscription and is Dawson's personal cell phone. This is the same number Dawson got in high school 17 years ago. Dawson still uses the number for all his personal calls and pays for this phone number from his personal bank account. In the four years preceding 4/22/2020 (the date Dawson's original Complaint was filed), Defendants knowingly and willfully sent 1,131 text messages without instituting procedures that meet the minimum standards required for telemarketing in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d) resulting in damages in an amount not less than $1,696,500 for these knowing and willful violations of 47 U.S.C. § 227(c). Alternatively, Dawson seeks an amount not less than $565,500 for at least 1,131 negligent violations of 47 U.S.C. § 227(c). Dawson also received from Defendants at least 1,131 commercial text messages in violation of RCW § 19.190.060 for which Dawson seeks an amount not less than $565,500, attorney's fees, and treble damages.

46. Plaintiff Anderson personally owns and uses the cellular phone number xxx-xxx-4700. This number is a residential telephone subscription and is Anderson's only phone. He uses this number for all his personal calls and keeps it with him at all times. He also uses this number for calls relating to his home-based business. On 4/23/2008, Anderson registered this number on the National Do Not Call Registry. In the four years preceding 4/28/2020 (the date Anderson's original Complaint was filed), Defendants sent Anderson at least 200 telemarketing text messages at this number. Anderson asked them to stop sending the messages, replying with "STOP" on multiple occasions, but Defendants ignored the request and kept contacting his cell phone at this number. Defendants knowingly and willfully sent these text messages and calls without instituting procedures that meet the minimum standards required for telemarketing in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d). Also, in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c), Defendants knowingly and willfully sent at least 2 text

messages to Anderson within a 12-month period after Anderson was registered on the National Do Not Call Registry, including but not limited to the period between 4/28/2016 and 4/28/2017. Anderson seeks an amount not less than $300,000 for at least 200 knowing and willful violations of 47 U.S.C. § 227(c). Alternatively, Anderson seeks an amount not less than $100,000 for at least 200 negligent violations of 47 U.S.C. § 227(c). *See* Ex. E: Mark Anderson's Text Messages from Defendant Exemplar.

47. Plaintiff Dunn personally owns and uses the cellular phone number xxx-xxx-0202. This number is a residential telephone subscription. On 7/17/2013, Dunn registered this number on the National Do Not Call Registry. In the four years preceding 4/22/2020 (the date Dunn's original Complaint was filed), Defendants sent Dunn at least 58 telemarketing text messages and calls to his cellphone at this number. Dunn responded to each text and call by stating "Not interested" and "Who is this?" Dunn never received a response to his questions and the unsolicited and harassing sales calls and texts continued. Defendants knowingly and willfully sent these text messages and phone calls without instituting procedures that meet the minimum standards required for telemarketing in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d). In violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c), Defendants knowingly and willfully sent at least 2 text messages to Dunn within a 12-month period after Dunn was registered on the National Do Not Call Registry, including but not limited to the period between 4/22/2016 and 4/22/2017. Dunn seeks an amount not less than $87,000 for at least 58 knowing and willful violations of 47 U.S.C. § 227(c). Alternatively, Dunn seeks an amount not less than $29,000 for at least 58 negligent violations of 47 U.S.C. § 227(c). *See* Ex. F: David Dunn's Text Messages from Defendant Exemplar.

48. Plaintiff Finlayson personally owns and uses the cellular phone number xxx-xxx-1971. This number is a residential telephone subscription, and it is Finlayson's only phone. He uses it for his personal calls and pays for it out of his personal account. On 11/21/2008, Finlayson registered this number on the National Do Not Call Registry. In the four years preceding 4/22/2020 (the date Finlayson's original Complaint was filed), Defendants sent

Finlayson at least 98 telemarketing text messages at this number, sending multiple messages each week. Defendants knowingly and willfully sent these text messages without instituting procedures that meet the minimum standards required for telemarketing in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d). Also, in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c), Defendants knowingly and willfully sent at least 2 text messages to Finlayson within a 12-month period after Finlayson was registered on the National Do Not Call Registry, including but not limited to the period between 5/16/2016 and 5/16/2017. Finlayson seeks an amount not less than $147,000 for at least 98 knowing and willful violations of 47 U.S.C. § 227(c). Alternatively, Finlayson seeks an amount not less than $49,000 for at least 98 negligent violations of 47 U.S.C. § 227(c). *See* Ex. G: Brandon Finlayson's Text Messages from Defendant Exemplar.

49.  Plaintiff Hammers personally owns and uses the cellular phone number xxx-xxx-5875. This number is a residential telephone subscription. On 9/1/2008, Hammers registered this number on the National Do Not Call Registry. In the four years preceding 4/28/2020 (the date Hammers's original Complaint was filed), Defendants sent Hammers at least 5 telemarketing text messages at this number. Defendants knowingly and willfully sent these text messages without instituting procedures that meet the minimum standards required for telemarketing in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d). Also, in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c), Defendants knowingly and willfully sent at least 2 text messages to Hammers within a 12-month period after Hammers was registered on the National Do Not Call Registry, including but not limited to the period between 10/22/2016 and 10/22/2017. Hammers seeks an amount not less than $7,500 for at least 5 knowing and willful violations of 47 U.S.C. § 227(c). Alternatively, Hammers seeks an amount not less than $2,500 for at least 5 negligent violations of 47 U.S.C. § 227(c). *See* Ex. H: Brian Hammers' Text Messages from Defendant Exemplar.

50.  Plaintiff Rabin personally owns and uses the cellular phone number xxx-xxx-5617. This number is a residential telephone subscription and Rabin's only telephone. Rabin uses this cell phone to communicate with family and friends and keeps this cell phone on him at all

times. Rabin charges this cell phone near his bedside at night. Rabin pays for this cell phone with funds from his personal bank account. On 1/8/2006, Rabin registered this number on the National Do Not Call Registry. In the four years preceding 4/28/2020 (the date Rabin's original Complaint was filed), Defendants sent Rabin at least 2,437 telemarketing text messages at this number. Defendants knowingly and willfully sent these text messages without instituting procedures that meet the minimum standards required for telemarketing in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d). Also, in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c), Defendants knowingly and willfully sent at least 2 text messages to Rabin within a 12-month period after Rabin was registered on the National Do Not Call Registry, including but not limited to the period between 6/12/2016 and 6/12/2017. Rabin seeks an amount not less than $3,655,500 for at least 2,437 knowing and willful violations of 47 U.S.C. § 227(c). Alternatively, Rabin seeks an amount not less than $1,218,500 for at least 2,437 negligent violations of 47 U.S.C. § 227(c). Finally, Defendants sent Rabin at least 2437 commercial text messages in violation of RCW § 19.190.060 for which Rabin seeks an amount not less than $1,218,500, attorney's fees, injunctive relief, and treble damages. *See* Ex. I: Jack Rabin's Text Messages from Defendant Exemplar.

51. Plaintiffs have lost time and have suffered annoyance, nuisance, and an egregious invasion of their privacy because of Defendants' text messages and calls.

52. Defendants harmed Plaintiffs in the exact way that Congress sought to prevent by enacting the TCPA when they failed to institute and maintain internal do not call procedures and policies, when they failed to comply with the TCPA's requirements, and when they placed automatic telemarketing text messages to Plaintiffs.

53. Those Plaintiffs residing in the State of Washington were harmed by Defendants in the exact way the Washington Legislature sought to prevent.

**FIRST CAUSE OF ACTION**
**Solicitations of Persons on the National Do Not all Registry**

54. Defendants violated 47 C.F.R. § 64.1200(c)(2) by sending telephone solicitation text messages to the residential cell phones of Plaintiffs Brandon Finlayson, Jack Rabin, Mark

Anderson, David Dunn, and Brian Hammers without consent while their numbers were on the DNCR.

55. Defendants did this willfully and knowingly. Defendants did not check the DNCR before sending any text messages.

56. Had Defendants checked the DNCR, Defendants would have seen that these Plaintiffs each registered their phone number on the DNCR to stop telephone solicitations.

57. Plaintiffs Brandon Finlayson, Jack Rabin, Mark Anderson, David Dunn, and Brian Hammers each have a residential telephone subscription as evidence by various facts including that Plaintiffs have a personal/family phone plan, Plaintiffs pay for the bill with their own personal funds, Plaintiffs use the phone number for all their personal calls, this is Plaintiffs' only phone number, etc.

58. Defendants sent more than one text message to each of these Plaintiffs within a 12-month period while each of their phone numbers were registered on the DNCR.

59. Defendants are personally liable for the telephone solicitations because they directly controlled, authorized, and participated in the sending of the telephone solicitations.

60. Plaintiffs are entitled to an award of $500 in statutory damages for each violation. 47 U.S.C. § 227(c)(5).

61. The court should award $1,500 in statutory damages for each violation because the violations were knowing and willful. *Id.*

**SECOND CAUSE OF ACTION**
**Failure to Implement the Minimum Telemarketing Standards**

62. Defendants violated 47 C.F.R. § 64.1200(d) by sending telemarketing text messages to Plaintiffs without disclosing the name of the individual sender, without disclosing the name of the entity on whose behalf the messages were sent, and without honoring Plaintiffs' opt-out requests.

63. Defendants knowingly and willfully sent telemarketing text messages to the cell phones of Plaintiffs without instituting the required minimum standards in violation of 47 C.F.R. § 64.1200(d).

64. Not a single text message ever disclosed the name of the person or the name of the entity sending the text message.

65. Defendants knowingly and willfully hides its identity when sending text messages to avoid legal complaints and lawsuits.

66. Defendants purposefully use hundreds of different phone numbers to send the text messages to prevent people from stopping the messages. When spamming Dawson, Defendants sent text messages using 117 different phone numbers.

67. Defendants are personally liable for the illegal telemarketing because they directly controlled, authorized, and participated in the sending of the telemarketing.

68. Plaintiffs with claims under 47 C.F.R § 64.1200(d) each have a residential telephone subscription as evidence by various facts including that Plaintiffs have a personal/family phone plan, Plaintiffs pay for the bill with their own personal funds, Plaintiffs use the phone number for all their personal calls, this is Plaintiffs' only phone number, etc., as set forth below in Section V. Statement of Individualized Facts and Claims.

69. Defendants sent more than one text message to each of these Plaintiffs within a 12-month period.

70. Plaintiffs are entitled to an award of $500 in statutory damages for each violation. 47 U.S.C. § 227(c)(5).

71. The court should award $1,500 in statutory damages for each violation because the violations were knowing and willful. *Id.*

### THIRD CAUSE OF ACTION
### Commercial Text Messages to Washington Residents

72. Defendants violated the Washington Consumer Protection Act, RCW 19.86, by initiating commercial text messages to the Washington-resident Plaintiffs Jack Rabin and Bob Dawson without consent.

73. Defendants violated RCW 19.86 by assisting in the transmission of commercial text messages to the Washington-resident Plaintiffs without consent.

74. Defendants are personally liable for the initiation of commercial text messages to the Washington-resident Plaintiffs Bob Dawson and Jack Rabin because they directly controlled, authorized, and participated in the sending of the text messages.

75. The Washington-resident Plaintiffs Bob Dawson and Jack Rabin have been damaged and are entitled to an award of $500 in statutory damages for each violation. RCW 19.86.090; see also *Wright v. Lyft, Inc.*, 189 Wash. 2d 718 (2017) (finding a violation of RCW 19.190.040 is a violation of Washington's Consumer Protection Act and establishes both the injury and causation elements thereof).

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request the Court grant Plaintiffs the following relief against Defendants:

 i. Plaintiffs seek the damages set forth above as a result of the violations of 47 U.S.C. § 227(c).

 ii. Plaintiffs seek an amount as set forth above a result of violations of RCW §19.86.

 iii. Plaintiffs seek costs pursuant to 28 U.S.C. § 1920.

 iv. Plaintiffs seek judgment interest pursuant to 28 U.S.C. § 1961.

 v. Plaintiffs seek attorney's fees pursuant to R.C.W. §19.86.090.

 vi. Plaintiffs seek treble damages pursuant to R.C.W. § 19.86.090.

 vii. Plaintiffs seek any other relief the Court may deem just and proper.

**JURY DEMAND**

Plaintiffs request a trial by jury of all claims that can be so tried.

DATED: June 23, 2025          Respectfully Submitted,

                    /s/ *James S. Wertheim*
                    James S. Wertheim

                    *Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 23, 2025, a copy of the foregoing was served via CM/ECF to Defendant's counsel of record.

                    /s/ *James S. Wertheim*
                    James S. Wertheim